**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| TSYS Acquiring Solutions, LLC, | ) | No. CV 09-0155-PHX-JAT |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Electronic Payment Systems, LLC, | ) | |
| Defendant. | ) | |

Pending before this Court is Defendant Electronic Payment Systems, LLC's ("EPS") Motion for Summary Judgment (Doc. # 15) and Plaintiff TSYS Acquiring Solution, LLC's ("TSYS") Cross-Motion for Summary Judgment (Doc. # 20). For the reasons that follow, the Court grants Defendant's motion and, accordingly, denies Plaintiff's motion.

**BACKGROUND**

EPS and TSYS are both companies involved in the credit/debit card industry. EPS is an independent sales organization/merchant service provider who contacts merchants and enters into contracts for the merchants to accept credit and debit cards. TSYS is a processor, processing the front end (authorization) as well as the back end (settlement) of credit card transactions. The parties entered into an agreement whereby EPS would use the processing services of TSYS. The parties' agreement contained an arbitration clause that provided for the arbitration of disputes arising out of the agreement.

From the outset of this relationship, a dispute existed between the parties as to the charges being assessed by TSYS for the services being provided to EPS. Each month EPS identified the disputed charges and paid the undisputed charges, although in some instances EPS paid the amounts it disputed in order to preclude the interruption of services provided by TSYS.

In February 2007, TSYS initiated arbitration to resolve the parties' billing disputes. TSYS asserted that it was entitled to be paid all of the amounts EPS had withheld as disputed. In response, EPS denied owing the disputed amounts and asserted various counter-claims. In September 2008, an arbitration hearing was held at the offices of the American Arbitration Association. The arbitrator ruled that EPS did not have to pay the amounts it disputed, and the arbitrator ruled for EPS on each of EPS' counter-claims and awarded EPS damages in excess of $2,991,000.00. TSYS filed the present action, seeking to vacatur of the arbitration award, but only with respect to that part of the award that grants EPS damages of $2,671,463.57 on its counter-claim for breach of contract.

## ANALYSIS

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). This case presents no genuine issues of material fact and, as such, is ripe for summary judgment.

Under the Federal Arbitration Act, a district court may vacate an arbitration award only under the following circumstances: (1) the award was procured by fraud, corruption, or undue means; (2) there was evidence of partiality or corruption on the part of the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior

prejudicing the rights of a party; or (4) the arbitrators exceeded their powers. 9 U.S.C. § 10. In seeking to have the award vacated, TSYS asserts only that the arbitrator exceeded his powers.

TSYS' main argument in support of its assertion that the arbitrator exceeded his powers is that the arbitrator manifestly disregarded the law when he issued an award in excess of the parties' limitation of liabilities provision. The parties agreement contains the following limitation of liabilities provision ("Section 7.9"):

> 7.9 <u>Limitation of Liability</u>. The liability of either party hereunder to the other or to any party claiming by, through or under EPS, shall be limited in the aggregate for the Initial Term, and for all subsequent Renewal Terms, of this Agreement to three (3) times the Average Monthly Billing, except for all amounts due to VITAL pursuant to paragraph 3.1 above.

(Doc. # 1, Ex. A, p. 15, ¶ 7.9.) In rendering his award, the arbitrator found that Section 7.9 was unenforceable because it violates public policy and is contrary to other provisions in the parties' agreement:

> To the extent any of the amounts awarded are not exempt from the limits of Section 7.9 as discussed above, Section 7.9 should not be enforced because it violates public policy and is contrary to the other provisions in the written Agreement. Exculpatory clauses, like Section 7.9, if enforced, enable a wrongdoer to avoid the consequences of their misdeeds and leave the party who suffers the injury or loss uncompensated. As a result, they are generally disfavored and often they are not enforced as they violate public policy.

(Doc. # 1, Ex. B, p. 38.) Thus, by finding Section 7.9 unenforceable–and, consequently, awarding over $2.6 million in damages for EPS' counterclaim–TSYS argues that the arbitrator exceeded his powers by manifestly disregarding Arizona law, which TSYS argues is supportive of enforcing limitation of liability provisions.

The Ninth Circuit Court of Appeals has held that arbitrators exceed their powers "not when they merely interpret or apply the governing law incorrectly, but when the award is 'completely irrational,' or exhibits a 'manifest disregard of law.'" *Kyocera Corp. v. Prudential-Bache T Servs.,* 341 F.3d 987, 997 (9th Cir. 2003) (citations omitted). A manifest disregard of the law means "more than just an error in the law or a failure on the part of the arbitrators to understand or apply the law. It must be clear from the record that the arbitrators

- 3 -

recognized the applicable law and then ignored it." *Mich. Mut. Ins. Co. v. Unigard Sec. Ins. Co.,* 44 F.3d 826, 832 (9th Cir. 1995) (citations omitted).

"The 'manifest disregard' of the law standard thus has two elements. 'One element looks to the result reached in the arbitration and evaluates whether it is clearly consistent or inconsistent with the controlling law.'" *Collins v. D.R. Horton, Inc.*, 361 F.Supp.2d 1085, 1100 (D. Ariz. 2005) (quoting STEPHEN L. HAYFORD, REINING IN THE 'MANIFEST DISREGARD STANDARD': THE KEY TO RESTORING ORDER TO THE LAW OF VACATUR, 1998 J. DISP. RESOL. 117, 124 (1998)). "To satisfy this element, 'a reviewing court must conclude that the arbitrator misapplied or failed to apply the relevant law touching upon the dispute before her in a manner that constitutes a blatant, gross error of law that is apparent on the face of the award.'" *Id.*

A legal error, "no matter how obvious or outrageous a court may deem it to be, cannot alone justify vacatur. That conclusion requires evaluation of the second element of the 'manifest disregard' of the law standard–the arbitrator's knowledge, her awareness of the relevant law and the manner in which she behaved in light of that knowledge." *Id.* That is, the arbitrator must have been aware of the controlling law and he or she must have consciously or intentionally chosen not to apply it in rendering the award. "Absent evidence in the record before the reviewing court reliably demonstrating that the arbitrator actually misapplied the relevant law and did so with knowledge of the error of that action and/or the intention to nullify the law or an awareness that he was doing so, vacatur is not appropriate." *Id.*

Under the first step of the analysis, TSYS argues that "Arizona law has long recognized the validity of limitation of liability clauses and upheld them, particularly in commercial settings, as being in accord with Arizona's public policy." (Doc. # 20 at p. 14.) In support of its argument, TSYS cites several Arizona cases approving limitation of liability clauses. *E.g., 1800 Ocotillo, LLC v. WLB Group, Inc.*, 196 P.3d 222 (Ariz. 2008); *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.* ("SRP I"), 694 P.2d 267 (Ariz. Ct. App. 1983), *vacated in part by* 694 P.2d 198 (Ariz. 1984) ("SRP II"); ARIZ.

REV. STAT. § 47-2719 (2005). The Court need not decide, however, whether the arbitrator's decision is clearly consistent or inconsistent with controlling Arizona law in the area of limitation upon liability clauses. Under step two of the analysis, TSYS has failed to demonstrate that the arbitrator recognized the applicable law and then proceeded to intentionally ignore or nullify it.

The arbitrator does not cite any case or statutory law in support of his statement that limitation of liability clauses are generally disfavored in Arizona as violative of public policy. Hence, there is nothing on the face of the arbitration award suggesting that the arbitrator recognized the controlling Arizona law, much less that he intentionally ignored or sought to nullify it. Moreover, during the entirety of the arbitration proceedings, TSYS did not cite a single Arizona case purporting to enforce limitation of liability clauses. EPS, however, did cite one Arizona case, *Airfreight Express Ltd v. Evergreen Air Center, Inc.*, 158 P.3d 232 (Ariz. Ct. App. 2007), which TSYS asserts was enough to inform the arbitrator concerning the status of the law surrounding limitation of liability clauses in Arizona.

*Airfreight* holds only that, as a matter of first impression, limitation of liability clauses can be held unenforceable if one party acted in bad faith. "As a matter of public policy, a party should not benefit from a bargain it performed in bad faith. Accordingly, in the absence of any contrary argument or authority, we adopt this sensible rule." *Id.* at 240. However, *Airfreight* does not contain any statements concerning the general status of Arizona law with respect to limitation of liability provisions. *Airfreight* does not assert that limitation of liability provisions are generally accepted unless certain exceptions exist. Thus, contrary to TSYS' assertion, *Airfreight* does not contain "the law regarding limitation of liability provisions," such that "the applicable law [was] squarely before the arbitrator." (Doc. # 20, p. 14.) There is no evidence in the record demonstrating that the arbitrator recognized the applicable law propounded by TSYS, and TSYS failed to educate the arbitrator concerning the applicable law. *GMS Group, LLC v. Benderson,* 326 F.3d 75, 81 (2d Cir. 2003) ("[T]he panel of arbitrators is a blank slate unless educated in the law by the parties.").

The Court's conclusion is supported by a review of the arbitration award itself. The arbitrator's award suggests that, not only was he unaware of the applicable law propounded by TSYS, but that he believed the status of the law to be otherwise: "Exculpatory clauses, like Section 7.9, if enforced, enable a wrongdoer to avoid the consequences of their misdeeds and leave the party who suffers the injury or loss uncompensated. As a result, they are generally disfavored and often they are not enforced as they violate public policy." (Doc. # 1, Ex. B, p. 38.) Thus, the arbitrator believed the status of Arizona law to be that such clauses are generally disfavored, the very opposite of the status of Arizona law TSYS puts forward. TSYS cannot now complain that the arbitrator misunderstood and applied the wrong law when TSYS failed to educate or otherwise inform the arbitrator concerning what TSYS considers to be the correct status of Arizona law.

TSYS urges this Court to take judicial notice of the fact that the arbitrator is a former member of the Arizona judiciary and that he authored an opinion while serving on the Arizona judiciary "enforcing a limitation of liability clause in a commercial setting such as this." (Doc. # 20, p. 14.) TSYS has not provided this Court with any cases that would support the Court's taking notice of an arbitrator's professional background as a means of bootstrapping knowledge of the applicable law into the mind of the arbitrator. This Court is loath to go beyond the record and impute certain and specific knowledge on the part of the arbitrator based upon his service on the Arizona judiciary. TSYS cannot substitute its failure to educate the arbitrator with speculation concerning what the arbitrator recalls from his service on the Arizona judiciary.

Therefore, even if the Court concluded that the arbitrator committed an error of law, the Court cannot conclude that the arbitrator understood he was acting in error, much less that he intentionally ignored or sought to nullify it. Thus, the Court cannot find that the arbitrator acted in "manifest disregard of the law."

TSYS also argues that the arbitrator exceeded his powers by awarding damages in excess of the parties' agreement. This argument, however, is a mere corollary of TSYS' argument that the arbitrator manifestly disregarded the law, which the Court has already

rejected. More importantly, the arbitrator's award of damages in excess of the parties' agreement is a direct result of the arbitrator's belief that Section 7.9 is unenforceable under Arizona law. TSYS does not assert that the arbitrator made an award that, but for Section 7.9, is otherwise impermissible under the parties' agreement, nor that the essence of the arbitrator's award is drawn from somewhere other than the parties' agreement. Rather, TSYS complains of the arbitrator's refusal to cap the damages according to Section 7.9. Because the Court has already determined that the arbitrator's conclusion that Section 7.9 is unenforceable is not grounds for vacatur, TSYS's argument fails.[1]

Accordingly,

**IT IS ORDERED** that Defendant Electronic Payment Systems, LLC's Motion for Summary Judgment (Doc. # 15) is granted.

**IT IS FURTHER ORDERED** that Plaintiff TSYS Acquiring Solution, LLC's Cross-Motion for Summary Judgment (Doc. # 20) is denied.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.

DATED this 22nd day of October, 2009.

_____
James A. Teilborg
United States District Judge

---

[1] The Court notes that, contrary to TSYS' assertion, this case does not present the scenario where the arbitrator, as if acting within a vacuum, simply exceeded his powers by awarding damages in excess of the parties' agreement. The arbitrator's damages award cannot properly be understood without realizing that the arbitrator specifically found Section 7.9 unenforceable. If the arbitrator had issued his award in excess of $2,991,000 without ever mentioning Section 7.9 or without finding Section 7.9 unenforceable, then TSYS' assertion likely has merit. However, the Court is not confronted with such a scenario, as the arbitrator did comment on Section 7.9 and he determined that it was unenforceable.